873 So.2d 1205 (2004)
STATE of Florida, Appellant,
v.
Leon ROBINSON, Appellee.
No. SC01-2620.
Supreme Court of Florida.
March 18, 2004.
Rehearing Denied May 13, 2004.
*1207 Charles J. Crist, Jr., Attorney General, Celia Terenzio, Bureau Chief, West Palm Beach, and James J. Carney, Assistant Attorney General, West Palm Beach, FL, for Appellant.
Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL, for Appellee.
CANTERO, J.
We review a decision of a district court of appeal declaring invalid the Florida Sexual Predators Act as applied to a defendant whose crime admittedly did not include a sexual component. See Robinson v. State, 804 So.2d 451 (Fla. 4th DCA 2001). We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. See also State v. Iacovone, 660 So.2d 1371, 1372 (Fla.1995) (reviewing under article V, section 3(b)(1) a district court decision holding a statute unconstitutional as applied); Psychiatric Assocs. v. Siegel, 610 So.2d 419, 421-23 (Fla.1992) (same). For the reasons explained below, we hold that the Act, which requires certain defendants to register as sexual predators and limits their employment opportunities, is unconstitutional as applied to a defendant whose crime indisputably did not contain a sexual element. We therefore affirm the decision of the district court, but on different grounds.

I. THE FACTS AND HISTORY OF THE CASE
When the vehicle in which Appellee, Leon Robinson, and a companion were riding *1208 ran out of gas, they began to walk. Shortly thereafter, Robinson's companion saw an opportunity to steal a car, and he did soeven though he saw a baby in the back seat. When Robinson entered the car moments later, he noticed the baby. Shortly after stealing the car, Robinson left the child, still sitting in her car seat, in front of a doctor's office. Robinson was convicted of carjacking and kidnapping. He received two life sentences, which are not at issue here.
On the State's motion, the trial court held a hearing under section 775.21, Florida Statutes (Supp.1998) (the Florida Sexual Predators Act (Act)) to determine whether Robinson should be designated a "sexual predator." Although the State conceded "that Robinson, in committing the crimes, had not engaged in any sexual act upon or in the presence of the child," 804 So.2d at 452, the circuit court nevertheless concluded that the "sexual predator" designation was mandatory because Robinson had been convicted of kidnapping a minor of whom he was not the parent. See § 775.21(4)(c), Fla. Stat. (Supp.1998). Robinson argued that in light of the elements of the crime of kidnapping, the nature of the crime, and the conceded facts of the case, he did not qualify as a sexual predator and thus his automatic designation was unconstitutional.
On appeal, the Fourth District Court of Appeal concluded that Robinson's designation as a sexual predator was mandatory, but held the statute unconstitutional as applied to his circumstances. 804 So.2d at 452. The district court found that the statute was overinclusive as applied to Robinson and did not pass the rational relationship test:
While the statute may have been based on the premise that providing the community with relevant information about certain types of offenders was a reasonable way to help them protect themselves and their children, we hold that the language used goes beyond that purpose when applied in this case. Designating a person such as Robinson as a sexual predator when there is no sexual element to his crime would lead to an absurd result. The legislature could have achieved the same remedial goals, for example, by patterning section 775.21 after the federal standard and, thus, specifically targeting those defendants who commit crimes against children regardless of any sexual element. By instead pigeonholing defendants such as Robinson into the same category as sexual predators, it has effectively subjected them to an unwarranted stigma. This is not only unjust, it is legally unsound. Accordingly, we reverse the designation.
Id. at 453 (footnote omitted). The court declared the statute unconstitutional as applied. Although the court did not indicate the constitutional ground for its decision, it appeared to base its analysis on the Equal Protection Clause because it noted that "kidnappers such as Robinson are not a part of a suspect or quasi-suspect class." Id. at 453 (citing F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). The State now appeals in this Court.

II. ROBINSON'S STANDING
The State first contends that Robinson lacked standing to challenge the trial court's order. We reject this argument. The district court had jurisdiction to review the order under Florida Rule of Appellate Procedure 9.140(b)(1)(C), which grants appellate jurisdiction over criminal court orders "entered after final judgment or finding of guilt." See also art. V, § 4(b)(1), Fla. Const. (granting district courts authority to review interlocutory orders *1209 to the extent provided by rules of the Supreme Court). The designation of an offender as a sexual predator is based on the offender's conviction for one of the crimes specified in the Act. § 775.21(4)(c), Fla. Stat. (Supp.1998). The order designating a defendant a sexual predator is thus entered after final judgment or a finding of guilt. See Thomas v. State, 716 So.2d 789 (Fla. 4th DCA 1997) (holding that an order designating a defendant a sexual predator was "entered after defendant was convicted and sentenced" and "is therefore appealable as an order entered after a `finding of guilt,' pursuant to rule 9.140(b)(1)(C)"); Downs v. State, 700 So.2d 789 (Fla. 2d DCA 1997) (same). Because Robinson was designated a sexual offender under the Act and subjected to its requirements, he had standing to challenge the trial court's order.

III. CONSTITUTIONALITY OF THE ACT AS APPLIED
We now consider the constitutionality of the Act. Robinson does not argue that the Act is facially unconstitutional. Rather, he argues that the Act is unconstitutional as applied to him. Specifically, he disputes his automatic designation as a sexual predator despite the admitted lack of any sexual component to his crime and the lack of a sexual motivation. The district court agreed, holding that the statute was overinclusive "as it covers offenses that do not involve nor require sexual contact." 804 So.2d at 452-53.
Although not entirely clear, the district court seemed to employ an equal protection analysis. See 804 So.2d at 453 (noting that kidnappers are not part of a suspect class). Robinson's argument in this Court is also based on the Equal Protection Clause. We believe, however, that the issue is more properly analyzed as one concerning due process.[1] As we explained in Westerheide v. State, 831 So.2d 93 (Fla.2002), "the equal protection clause is only concerned with whether the classification pursuant to a particular legislative enactment is properly drawn. Procedural due process is the constitutional guarantee involved with a determination of whether a specific individual is placed within a classification." Id. at 110-11; see also 16B Am. Jur.2d Constitutional Law § 789 (1998) (stating that although due process and equal protection claims "may overlap and a violation of one may at times involve the violation of the other, the spheres of protection they offer are not coterminous").[2] It is the Due Process Clause that protects the individual against the arbitrary and unreasonable exercise of governmental power. See County of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 *1210 L.Ed.2d 1043 (1998); Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); see also State v. Walker, 444 So.2d 1137, 1139 (Fla. 2d DCA) (noting that "the basic principle of substantive due process is to protect the individual from an abusive exercise of governmental powers"), aff'd, 461 So.2d 108, 108 (Fla.1984) ("adopt[ing] the opinion of Judge Grimes"). Robinson does not contest the classification of some individuals as sexual predators; he simply argues that he does not belong within the classification. His argument therefore raises a due process claim.[3]

A. The Requirements of the Act
We first review the Act under which Robinson was designated a sexual predator. The Florida statute, entitled the Florida Sexual Predators Act, is similar to many "Megan's Laws" enacted in virtually every state.[4] The statute contains a statement of its findings and intent. They include the following:
(a) Repeat sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety. Sexual offenders are extremely likely to use physical violence and to repeat their offenses, and most sexual offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes. This makes the cost of sexual offender victimization to society at large, while incalculable, clearly exorbitant.

(b) The high level of threat that a sexual predator presents to the public safety, and the long-term effects suffered by victims of sex offenses, provide the state with sufficient justification to implement a strategy....
(c) The state has a compelling interest in protecting the public from sexual predators and in protecting children from predatory sexual activity, and there is sufficient justification for requiring sexual predators to register and for requiring community and public notification of the presence of sexual predators.
§ 775.21(3), Fla. Stat. (Supp.1998) (emphasis added). These findings clearly express the Act's purpose of protecting the public, and especially children, from predatory sexual activity.
In light of these findings, the Legislature created categories of crimes and required that those who commit these enumerated *1211 crimes must be designated sexual predators:
(c) For a current offense committed on or after October 1, 1996, upon conviction, an offender shall be designated as a "sexual predator" under subsection (5), and subject to registration under subsection (6) and community and public notification under subsection (7) if:
1. The felony meets the criteria of former ss. 775.22(2) and 775.23(2), specifically, the felony is:
a. A capital, life, or first-degree felony violation of s. 787.01 [kidnapping] or s. 787.02 [false imprisonment], where the victim is a minor and the defendant is not the victim's parent, or of chapter 794 [sexual battery] or s. 847.0145 [selling/buying minors], or a violation of a similar law of another jurisdiction;
b. An attempt to commit a capital, life, or first-degree felony violation of chapter 794, where the victim is a minor, or a violation of a similar law of another jurisdiction; or
c. Any second-degree or greater felony violation of s. 787.01 [kidnapping] or s. 787.02 [false imprisonment], where the victim is a minor and the defendant is not the victim's parent; chapter 794 [sexual battery]; s. 796.03; s. 800.04 [lewdness]; s. 825.1025(2)(b); s. 827.071 [sexual performance of a child]; or s. 847.0145; or a violation of a similar law of another jurisdiction, and the offender has previously been convicted of or found to have committed, or has pled nolo contendere or guilty to, regardless of adjudication, any violation of s. 787.01 or s. 787.02, where the victim is a minor and the defendant is not the victim's parent; s. 794.011(2), (3), (4), (5), or (8); s. 794.023; s. 796.03; s. 800.04; s. 825.1025; s. 827.071; s. 847.0133; s. 847.0135; or s. 847.0145, or a violation of a similar law of another jurisdiction[.]
§ 775.21(4)(c), Fla. Stat. (Supp.1998) (emphasis added). Before 1998, all qualifying felonies involved a sexual component. See § 775.21, Fla. Stat. (1997). In chapter 98-81, section 3, Laws of Florida, the Legislature added sections 787.01 (kidnapping) and 787.02 (false imprisonment) to the list of qualifying felonies.[5]
The Legislature concluded it had a compelling interest in protecting children and the public from sexual predators and imposed various requirements and restrictions on sexual predators. For example, a sexual predator must comply with registration requirements.
(a) A sexual predator must register with the [Florida Department of Law Enforcement] by providing the following information to the department:
1. Name, social security number, age, race, sex, date of birth, height, weight, hair and eye color, photograph, address of legal residence and address of any current temporary residence, including a rural route address and a post office box, date and place of any employment, date and place of each conviction, fingerprints, and a brief description of the crime or crimes committed by the offender....
2. Any other information determined necessary by the department, including criminal and corrections records; nonprivileged *1212 personnel, treatment, and abuse registry records; and evidentiary genetic markers when available.
§ 775.21(6)(a), Fla. Stat. (Supp.1998). A sexual predator not in the custody or supervision of the Department of Corrections must register in person within 48 hours of establishing temporary or permanent residence, or any time he or she moves, with both the Florida Department of Law Enforcement or the local sheriff and with the Department of Highway Safety and Motor Vehicles. § 775.21(6)(e)-(f), Fla. Stat. (Supp.1998). Prisoners designated sexual offenders must register with the Department of Corrections. § 775.21(6)(b). The registration requirement is imposed for the offender's lifetime. § 775.21(6)(l).[6] Failure to comply with the registration and other requirements of the Act constitutes a third-degree felony. § 775.21(10).
The Act also requires that within 48 hours of a sexual predator's registration, law enforcement agencies notify "members of the community and the public," including each day care center and school within a mile of the offender's residence, of the sexual predator's presence. § 775.21(7)(a), Fla. Stat. (Supp.1998). It further immunizes from civil liability various officials and individuals for any damages resulting from the release of information about a designated sexual predator when the entity or individual was "acting upon the direction of any law enforcement agency." § 775.21(9). Finally, the Act makes it a felony for most sexual predators to work or volunteer "at any business, school, day care center, park, playground, or other place where children regularly congregate." § 775.21(10)(b).
Under the Act, the sole criterion for determining whether a defendant must be designated a "sexual predator" is whether the defendant was convicted of a qualifying offense. See § 775.21(5)(a)(1); see also Kelly v. State, 795 So.2d 135, 137 (Fla. 5th DCA 2001) (explaining that "based on the unambiguous language of the Act and the clearly stated legislative intent, ... the Act is mandatory and affords no discretion to the trial judge to designate an individual a sexual predator if the statutory criteria are established"), review denied, 851 So.2d 729 (Fla.2003).

B. Applicability of Due Process Protections
Both the United States and Florida Constitutions protect individuals from arbitrary and unreasonable governmental interference with a person's right to life, liberty, and property. See U.S. Const. amends. V ("[N]or shall any person ... be deprived of life, liberty, or property, without due process of law."); XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law."); art. I, § 9, Fla. Const. ("No person shall be deprived of life, liberty or property without due process of law...."). The United States Supreme Court has identified two distinct areas of due process protection: procedural and substantive. Procedural due process affords notice of a possible government deprivation and a meaningful opportunity to contest it, usually before it is imposed. See, e.g., Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (explaining that the "essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it"). By contrast, *1213 substantive due process bars "certain government actions regardless of the fairness of the procedures used to implement them." County of Sacramento v. Lewis, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).
This case implicates substantive due process. The Act provides for a hearing before an individual is designated a sexual predator. See § 775.21(5), Fla. Stat. (Supp.1998) (requiring the designation to be made at the sentencing hearing). Therefore, the issue is not notice or an opportunity to be heard. Even if Robinson can demonstrate that he is not a sexual predatoror that his offense did not contain a sexual elementthe Act requires his designation anyway. The hearing is essentially a perfunctory step along the way to designation. The question here is whether the State may designate someone a sexual predator when the State agrees he did not commit, or intend to commit, a sexual crime. That question implicates substantive due process concerns.
The due process clauses, however, only protect against deprivations of life, liberty, or property. Therefore, the next question is whether the requirement that Robinson register as a sexual predator, along with the Act's other requirements, deprives him of one of those rights. Neither Robinson's right to life nor his right to property is involved. Thus, if Robinson is entitled to the protections of the due process clause, there must be an infringement of a liberty interest.
Robinson's designation as a "sexual predator" certainly constitutes a stigma.[7] No one can deny that such a designation affects one's good name and reputation. See, e.g., Doe No. 1 v. Williams, 167 F.Supp.2d 45, 51 (D.D.C. 2001) (noting that "[i]t is beyond dispute that public notification pursuant to the [District of Columbia's Sexual Offender Registration Act] results in stigma"), rev'd in part on other grounds sub nom. Does 1-5 v. Williams, No. 01-7162, 2003 WL 21466903 (D.C.Cir. Jun 19, 2003). The interest in one's reputation alone, however, is not a liberty interest and thus "the frequently drastic effect of the `stigma' which may result from defamation by the government in a variety of contexts" does not by itself constitute a harm sufficient to be afforded the protections of due process. Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Such a stigma must be coupled with "more tangible interests such as employment" or altered legal status to establish entitlement to these protections. Id. at 701, 708-09, 96 S.Ct. 1155.
We believe the Act imposes more than a stigma. As outlined above, under the Act, a person designated a sexual predator is subject to life-long registration requirements. See § 775.21(5), Fla. Stat. (Supp. 1998). Further, as another court has noted, "[t]hese statutes create no mere informational reporting requirement, the violation of which is punished with a small fine." Giorgetti v. State, 821 So.2d 417, 422 (Fla. 4th DCA 2002), approved, 868 So.2d 512 (Fla. 2004). To the contrary, the failure of a designated sexual offender to comply with these and other requirements of the Act constitutes a third-degree felony. § 775.21(10). Moreover, a designated sexual predator is prohibited from seeking certain tort remedies, see § 775.21(9), and from working "where children regularly congregate." § 775.21 (10)(b). Finally, we cannot ignore *1214 that designated sexual predators are subject to social ostracism, verbal (and sometimes physical) abuse, and the constant surveillance of concerned neighbors. These additional limitations implicate more than merely a stigma to one's reputation. Other courts have found that similar registration statutes contained sufficient stigma-plus factors to implicate liberty interests. See, e.g., State v. Bani, 97 Hawai'i 285, 36 P.3d 1255, 1264 (2001); Doe v. Attorney General, 426 Mass. 136, 686 N.E.2d 1007, 1012-13 (1997); Noble v. Bd. of Parole, 327 Or. 485, 964 P.2d 990, 995-96 (1998). We therefore hold that the designation as a sexual predator constitutes a deprivation of a protected liberty interest.

C. The Standard for Analyzing the Act's Constitutionality
Having determined that a constitutional due process right is at stake Robinson's liberty interestwe must now decide the appropriate standard for analyzing whether the Act adequately protects that right. "[T]he basic test [of substantive due process] is whether the state can justify the infringement of its legislative activity upon personal rights and liberties." In re Forfeiture of 1969 Piper Navajo, 592 So.2d 233, 235 (Fla.1992). A statute must not be unreasonable, arbitrary, or capricious, and must have a "reasonable and substantial relation" to a legitimate governmental objective. State v. Saiez, 489 So.2d 1125, 1128 (Fla.1986); see In re Forfeiture, 592 So.2d at 235. The rational relationship test used to analyze a substantive due process claim is synonymous with the reasonableness analysis of an equal protection claim. See In re Wood, 866 F.2d 1367, 1371 (11th Cir.1989) (stating that standard for evaluating substantive due process claim in which fundamental right is not implicated is "virtually identical to the `rational relationship' test for evaluating equal protection claims"); State v. Walker, 444 So.2d 1137, 1138 (Fla. 2d DCA) (noting that the test for equal protection and substantive due process claim "is essentially the same where no fundamental rights are at stake"), aff'd, 461 So.2d 108 (Fla.1984). When a statute encroaches on fundamental constitutional rights, however, the statute also must be narrowly tailored to achieve the state's purpose. See In re Forfeiture, 592 So.2d at 235; 10A Fla. Jur.2d Constitutional Law § 485 (2003). As explained below, we need not decide whether the Act implicates a fundamental right because the statute as applied to Robinson does not meet the rational relationship test.

D. The Due Process Violation
As stated previously, the Act's purpose is to protect the citizenry, particularly children, from those who have committed or have attempted to commit sexual or sexually exploitative crimes. Section 775.21(4)(c) of the Act states that "an offender shall be designated as a `sexual predator'" if the offender has committed one of the enumerated crimes. The Act does not separately define "sexual predator." Robinson was automatically designated a sexual predator solely because he was convicted of kidnapping a child of whom he is not the parent. See § 775.21(4)(c), Fla. Stat. (Supp.1998). The crime of kidnapping does not by definition contain a sexual component. See § 787.01, Fla. Stat. (1999) (defining kidnapping). Neither does carjacking, the other crime of which he was convicted. See § 812.133, Fla. Stat. (1999). Further, the circumstances of his crime concededly lacked any sexual component. Both in the information and at trial, the State contended that the kidnapping was committed solely to facilitate the carjacking because Robinson's car ran out of gas. The child involved was an infant, whom Robinson left *1215 outside a doctor's office a few blocks from the scene of the carjacking. No sexual motive existed. At the hearing on the State's motion to declare Robinson a sexual predator, the State agreed that there was "no sex involved" in Robinson's kidnapping of the child. The State sought the designation solely because of the kidnapping conviction, and the court designated Robinson a sexual predator solely because the Act required it. The sexual predator designation and its many requirements were thus imposed on Robinson without any evidenceor even the contentionof a sexual motive or a sexual or sexually exploitative act. Nor can a sexual motive or a sexual or sexually exploitative act be inferred from the circumstances of the crime.
The State argues that the Act meets rational-basis review because the Legislature rationally could have concluded that the inclusion of all defendants convicted of kidnapping or false imprisonment of a minor not their child is justified given that a high percentage of such crimes are committed for some sexual purpose. The State also argues that the Legislature rationally could have concluded that the difficulty in confirming whether an abducted child has been sexually exploited or whether the perpetrator had a sexual motive justifies the inclusion of all persons convicted of kidnapping or false imprisonment of a minor not their child. The State notes that because of a child victim's trauma, fear, or infancy, the child may be unwilling or unable to confirm whether sexual exploitation occurred. Further, the State urges that the very nature of the crimes of kidnapping and false imprisonment makes it difficult to prove sexual exploitation or motivation because the child is removed from public view.
As we already have noted, Robinson does not argue that the Act is unconstitutional on its face. He also does not argue that the Act is unconstitutional as applied to all child kidnappers. Therefore, we assume, without deciding, that the Act's designation of child kidnappers as sexual predators is rationally related to the legislative purpose of protecting children from sexual predators. Although the Legislature's concern for protecting our children from sexual predators may be reasonable, however, the application of this statute to a defendant whom the State concedes did not commit a sexual offense is not. Robinson's designation as a sexual predator can fulfill none of the statute's purposes. The State conceded he did not commit a sexual offense, and he left the infant child at a doctor's office a few blocks from where he and his companion appropriated the car. Thus, no question remains about whether Robinson possibly could have committed a sexual act on the child. No rational relationship exists between the statute's purpose of protecting the public from known sexual predators and Robinson's designation as one.
Ohio appellate courts have reached this same conclusion in remarkably similar circumstances. In State v. Reine, No. 19157, 2003 WL 77174, at *1 (Ohio Ct.App. Jan.10, 2003), appeal dismissed, 99 Ohio St.3d 1549, 795 N.E.2d 686 (2003), the defendant pled guilty to aggravated burglary, aggravated robbery, and four counts of kidnapping. As in this case, even though the State stipulated that the defendant's offenses "were committed without any sexual motivation or purpose," because the kidnapping victims were minors, the statute required the trial court to designate the defendant a sexually oriented offender. Id. Presented with a due process challenge, the appellate court framed the issue as follows:
The question is whether the requirement that an offender who has committed *1216 an offense under circumstances involving no sexual motivation or purpose nevertheless be classified as a "sexually oriented offender," to register and to be reported to the public as a "sexually oriented offender," bears any rational relationship to the purposes of the statute, or whether that requirement is unreasonable or arbitrary as applied to an offender who has committed an offense without any sexual motivation or purpose.
Id. at *3. The court stated that the statute's purposeto protect people, especially children, from sexually oriented offenderswas valid, but that such purpose was not served, and was possibly "dis-served," by designating common criminals such as the defendant as sexual offenders. Id. at *3-4. Holding the statute unconstitutional as applied, the court stated:
Because we conclude that the application of the statutory requirement that Reine be classified as a sexually oriented offender, in a case in which it has been stipulated that his offenses were committed without any sexual motivation or purpose, is unreasonable and arbitrary, and bears no rational relationship to the purposes of the statute, we conclude that it offends the Due Process clauses of both the Ohio and United States constitutions.
Id. at *5; accord State v. Barksdale, No. 19294, 2003 WL 77115 (Ohio Ct.App. Jan.10, 2003) (identical opinion, different defendant), appeal dismissed, 99 Ohio St.3d 1549, 795 N.E.2d 686 (2003); cf. State v. Young, Nos. 19472, 19473, 2003 WL 2004025, at *6 (Ohio Ct.App. May 2, 2003) (affirming trial court's refusal to designate defendant as sexually oriented offender, and agreeing that abduction offenses "were not motivated in any way by sexual purpose, or with a purpose to gratify Young's sexual needs, or to allow Young to engage in sexual activity" and there was no rational relationship between "governmental goal of protecting the public from sexually oriented offenders and the facts of this case"), appeal dismissed, 99 Ohio St.3d 1549, 795 N.E.2d 686 (2003); see also State v. Washington, No. 99-L-015, 2001 WL 1415568, at *3-4 (Ohio Ct.App. Nov. 2, 2001) (holding that the designation of a defendant as sexually oriented offender for kidnapping his child where there was no evidence of sexual motivation bore no rational relationship to purpose of the statute). A New York court also has declared a similar statute unconstitutional (on both due process and equal protection grounds) as applied to a defendant who did not commit a sexual offense. See People v. Bell, 2003 WL 21649678, 3 Misc.3d 773, 778 N.Y.S.2d 837 (N.Y.Sup.Ct. June 30, 2003).[8]
*1217 Our holding today is narrow. We hold only that under the facts of this case, where the State concedes that the crime contained no sexual element and the circumstances of the crime conclusively belie any sexual motive, the designation of the defendant as a sexual predatorwhich then invokes the attendant statutory requirements and prohibitionsbased solely on his conviction for kidnapping a minor not his child violates the defendant's right to due process of law.

IV. CONCLUSION
We hold that the sexual offender designation is unconstitutional as applied to Robinson, who was not convicted of an offense containing a sexual element, in circumstances concededly involving no sexual act, and which was committed without any sexual motivation or purpose. Accordingly, we affirm the decision of the district court in this case and remand for further proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and PARIENTE and QUINCE, JJ., concur.
LEWIS, J., concurs in result only.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
Although I concur in the majority's conclusions regarding the standing issue, I dissent from the majority opinion. I recognize and appreciate that the majority's opinion expressly states that its holding is narrow and limited to "the facts of this case, where the State concedes that the crime contained no sexual element and the circumstances of the crime conclusively belie any sexual motive." Majority op. at 23. I agree that it is troubling that the State would pursue a sexual predator designation under the circumstances of this case, in which the State makes the concession it made and Robinson has two life sentences to serve. However, I also conclude that the circumstances of this case, the record in this case, and the arguments made by Robinson in the courts below make this an inappropriate case for this Court to reach the constitutional issues that the majority opinion discusses.
On the basis of a conviction for kidnapping, the State moved for Robinson to be designated a "sexual predator" under section 775.21, Florida Statutes (Supp.1998) (Florida Sexual Predators Act) (Act). At that time, the Act read in pertinent part as follows:
(4) SEXUAL PREDATOR CRITERIA.
. . . .
(c) ... [U]pon conviction, an offender shall be designated as a "sexual predator" under subsection (5), and subject to registration under subsection (6) and community and public notification under subsection (7) if:
1. The felony meets the criteria of former ss. 775.22(2) and 775.23(2), specifically, the felony is:
a. A capital, life or first-degree felony violation of s. 787.01 [kidnapping] or 787.02 [false imprisonment], where the victim is a minor and the defendant is not the victim's parent....
§ 775.21, Fla. Stat. (Supp.1998).[9] Upon the State's motion, the circuit court held a *1218 hearing, at which the State agreed "there was no sex involved" in Robinson's crime. Based on its reading of the Act, however, the circuit court concluded that Robinson met the statutory definition of a sexual predator and, therefore, his designation as a sexual predator was mandatory.
On appeal, Robinson argued that the Act is unconstitutionally overinclusive because it covers offenses that do not involve or require sexual contact. The Fourth District Court of Appeal agreed and reversed Robinson's designation. Robinson v. State, 804 So.2d 451, 452-53 (Fla. 4th DCA 2001). In a threshold determination, the court noted that the rational relationship test applied to Robinson's constitutional challenge because the Act is regulatory, not punitive, and kidnappers are not in a suspect or quasi-suspect class. Id. at 453. Without expressly so stating, the court thereby signaled that it was employing an equal protection analysis.[10] The court then concluded that the Act did not pass the rational relationship test when applied in Robinson's case because there was "no sexual element to his crime." 804 So.2d at 453. In a dissenting opinion, Judge Stone agreed that the rational relationship test applied but concluded that the Act is not unconstitutionally overinclusive because "it is the legislature's prerogative to include the broad category of kidnapping in this statute, regardless of the circumstances under which the child is kidnapped or the length of time the child is held and notwithstanding an absence of evidence of what occurred during the captivity." Id. (Stone, J., dissenting).
Because the Fourth District's decision declared a state statute unconstitutional, this Court accepted appellate jurisdiction. See art. V, § 3(b)(1), Fla. Const. In his brief and oral argument before this Court, Robinson challenged the Act's constitutionality on two separate grounds. As his first ground, he argued that, notwithstanding the Act's facial constitutionality, the legitimate governmental purpose of notifying the public of where sexual predators reside is not rationally related to designation of Robinson as a sexual predator, and thus the Act is unconstitutional as applied to him. This argument, which challenges the broadness of the Act's classification of "sexual predators," is essentially an equal protection challenge. As his second ground, Robinson argued that the Act violates his substantive due process rights because it establishes a conclusive presumptionthat a person's crime of kidnapping of a minor who is not his own child was a sexually exploitative offense or motivated by an intent to engage in sexual exploitationwithout providing an opportunity to rebut that presumption.
Thus, this case addresses the constitutionality of a state statute. Although such issues are reviewed de novo, statutes come to this Court "clothed with a presumption of constitutionality." City of Miami v. McGrath, 824 So.2d 143, 146 (Fla.2002). All reasonable doubts are to be resolved in favor of the statute's validity. In re Caldwell's Estate, 247 So.2d 1, 2 (Fla.1971). Additionally, this case involves a statutory classification. Statutory classifications are *1219 presumed valid whenever reasonably possible. See Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); North Ridge Gen. Hosp. v. City of Oakland Park, 374 So.2d 461, 464 (Fla.1979). The party challenging a legislative classification bears the burden of proving its invalidity. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79, 31 S.Ct. 337, 55 L.Ed. 369 (1911); Fla. High Sch. Activities Ass'n v. Thomas, 434 So.2d 306, 308 (Fla.1983).
Given these standards, I believe the majority's decision to find the Act, which unambiguously and mandatorily defines Robinson as a sexual predator, unconstitutional as applied to Robinson to be erroneous as its analysis is based on an unpreserved and insufficiently established due process argument. First, as the majority acknowledges, the Fourth District appears to have employed an equal protection, not due process, analysis in the decision under review. Second, Robinson's due process claim raised before this Courtthat the Act violates his substantive due process rights by establishing a conclusive presumptionwas neither specifically raised before the circuit court below[11] nor mentioned by the Fourth District in the decision under review. Given that the only due process claim ever raised by Robinson was not properly preserved for appellate review and that the decision under review relied upon an equal protection analysis to hold the Act invalid as applied to Robinson, I believe the majority errs in addressing sua sponte an issue that is not properly before this Court. Without expressly stating it, the majority has employed what has become known as the "tipsy coachman" doctrine that allows an appellate court to affirm a trial court that reaches the right result but for the wrong reasons. See Robertson v. State, 829 So.2d 901, 906 (Fla. 2002). However, "[t]he key to the application of this doctrine of appellate efficiency is that there must have been support for the alternative theory or principle of law in the record before the trial court." Id. at 906-07. The record in this case is remarkably lacking in support for the due process analysis utilized by the majority, as best evidenced by the complete absence of argument regarding the highly relevant "stigma plus" test until this Court raised the issue in the oral argument of this case.
Furthermore, even if the due process issue taken up by the majority were preserved, I find it insufficiently established in this case. Robinson fails to meet the threshold requirement for challenging a statute under the Due Process Clause-that a protected life, liberty or property interest is at stake. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). As the majority acknowledges, the United States Supreme Court has held that the imposition of a stigma alone is an insufficient ground for finding a liberty interest protected under the Fourteenth Amendment.
*1220 In Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court stated, in the context of a due process challenge to the posting of a police flyer of "active shoplifters," that "reputation alone, apart from some more tangible interests such as employment, is [n]either `liberty' nor `property' by itself sufficient to invoke the procedural protection of the Due Process Clause." See also Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 6-7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003)
("In Paul ..., we held that mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest."). Rather, a governmental action challenged on due process grounds must "remove or significantly alter" an interest "recognized and protected by state law." Paul, 424 U.S. at 710-711, 96 S.Ct. 1155. Both federal and Florida courts have interpreted Paul as setting forth a "stigma plus" test to be applied when a plaintiff alleges harm to his or her reputation that requires proof that the challenged governmental action not only stigmatizes the plaintiff but also has the effect of altering or extinguishing another interest previously recognized under state law. See, e.g., Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994); Gervin v. Andrews, 826 So.2d 504 (Fla. 4th DCA 2002).
Here, Robinson wholly failed to argue the significant question of whether his case meets the "stigma plus" test. Rather, in a mere footnote of his brief, he stated in a conclusory manner that designation as a sexual predator imposes a social stigma upon him and affects his liberty interest because it regulates his whereabouts as a sexual predator. However, as the State correctly noted, Robinson is serving two life sentences. Therefore, any effect that designation as a sexual predator will have upon him is minimal. While the Act provides that a person designated as a sexual predator who is in the custody or control of the Department of Corrections must register with the Department of Corrections, see § 775.21(6)(b), Fla. Stat. (2002), all other registration and notification duties under the Act do not apply until the offender is released from custody, see § 775.21(6)(f)-(j), (l,) Fla. Stat. (2002). Thus, even assuming arguendo that the Act deprives some sexual predator designees of a liberty interest,[12] under the specific *1221 facts of this as-applied challenge, the threshold requirement that a protected life, liberty, or property interest be at stake has not been met.
NOTES
[1] We have approved constitutional decisions of the district courts based on different constitutional grounds. See State v. Saiez, 489 So.2d 1125, 1126, 1129 (Fla.1986) (agreeing that the subject statute was unconstitutional, but rejecting the district court's reasoning that the statute was overbroad and vague and holding instead that statute violated due process); see also Westerheide v. State, 831 So.2d 93, 110-11 (Fla.2002) (concluding that the defendant's equal protection challenge to determinations made under the sexual offender involuntary commitment statute was properly a due process claim).
[2] We recognize that the United States Supreme Court also has held that the equal protection clause may give rise to a cause of action by a "`class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); see also Robert C. Farrell, Classes, Persons, Equal Protection, and Village of Willowbrook v. Olech, 78 Wash. L.Rev. 367, 393-99 (2003) (explaining equal protection basis for Olech). Such analysis, however, does not apply here.
[3] Robinson adequately preserved the due process argument at the hearing below, where he argued as follows:

I believe the statute, it would be unconstitutional, unconstitutional application to Mr. Robinson. It does not lie there. If the Court looks at the definition of a sexual predator, all statutes must be strictly construed. Legislative intent of this was to weed out sexual predators. Says therein the definition of a sexual predator. According to that definition, Mr. Robinson does not fit there or the facts of this case shows he does not fit there, in the definition of sexual predator. Somehow, by the very nature of a crime, without regard to what the acts were or the nature was, falls into sexual predator, crime is designated automatically. That would be over broad and unconstitutional, in my opinion. It would be an unconstitutional application to Mr. Robinson.... If it is an absolute finding you must find somebody because of a conviction of a charge with regard to the rest of that statute of what is a sexual predator, this is definitely an unconstitutional statute.
[4] The "Megan's Law" was enacted in memory of Megan Kanka, a seven-year-old New Jersey girl who was sexually assaulted and murdered by a neighbor who had been twice convicted of sexual offenses. See Doe v. Pataki, 120 F.3d 1263, 1265 n. 1 (2d Cir.1997).
[5] As the district court noted in the opinion below, 804 So.2d at 453 n. 1, the federal statute, known as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, distinguishes among three categories of individuals: those convicted of a criminal offense by a nonparent against a victim who is a minor, such as kidnapping and false imprisonment; those convicted of a sexually violent offense; and sexually violent predators. See 42 U.S.C. § 14071(a) (2003). The statute imposes different registration requirements for each.
[6] The statute allows sexual predators who meet certain conditions to petition the circuit court for removal of the designation. Id. § 775.21(6)(l). Offenders designated before October 1998 must wait at least ten years to petition, and offenders designated thereafter must wait twenty.
[7] A "stigma" is "[a] mark or token of infamy, disgrace, or reproach." The American Heritage Dictionary of the English Language 1702 (4th ed.2000).
[8] The State filed as supplemental authority the United States Supreme Court's decision in Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). In Doe, the Supreme Court reversed a state court holding that a defendant designated a sexual offender under a Connecticut statute was entitled to a hearing on whether he was "currently dangerous." The Court stated that under that statute, dangerousness was irrelevant and concluded that "assuming, arguendo, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact [dangerousness] that is not material under the Connecticut statute." Id. at 7, 123 S.Ct. 1160. The Court's reasoning was based on the idea that the sexual offender designation "turn[ed] on an offender's conviction alonea fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." Id. Unlike the defendant in Doe, Robinson was not convicted of a crime involving a sexual element or intent. Therefore, unlike that defendant, he did not have a meaningful opportunity to contest whether his offense was sexually related or sexually exploitative in nature or purpose. Moreover, the purposes of the Actto protect the citizenry, particularly children, from those who have committed or attempted to commit sexual or sexually exploitative crimesare in no way served by designating non-sexual offenders as sexual predators.
[9] In 1998, the Legislature added sections 787.01 and 787.02 to the list of enumerated felonies giving rise to sexual predator designation. See ch. 98-81, § 3, Laws of Fla. Prior to that addition, all enumerated felonies inherently involved a sexual component as an element of the crime. See § 775.21, Fla. Stat. (1997).
[10] This is bolstered by the fact that less than a month following the issuance of its Robinson decision, the Fourth District addressed a similar challenge to section 943.0435, Florida Statutes (2001), Florida's "sexual offender" registration statute, and cited Robinson for support of its holding that the "statute violates equal protection in classifying [Raines] as a `sexual offender,' when he was not convicted of an offense involving any sexual component." Raines v. State, 805 So.2d 999, 1000 (Fla. 4th DCA 2001) (emphasis added).
[11] At the designation hearing, Robinson's counsel initially argued that the language of and legislative intent behind section 775.21 allowed trial court discretion as to whether to designate an offender. He argued in the alternative that mandatory application of the Act to Robinson would be unconstitutional because both parties stipulated that no sex was involved in this case. The substantive due process/conclusive presumption argument now advanced to this Court simply was not preserved at the hearing. In fact, Robinson did not raise the argument that the Act unconstitutionally created a conclusive presumption until approximately nine months after filing his notice of appeal with the Fourth District, when he filed before the circuit court a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800. This was clearly improper as a sexual predator designation is not a sentence. See Angell v. State, 712 So.2d 1132 (Fla. 2d DCA 1998) (holding that designation is neither a sentence nor a punishment).
[12] Although the majority finds the Act generally implicates due process protection, I find this issue less than salient and one that should not be ruled upon without full, on-point briefing, which does not exist in this case. I note that one district court has found that the Act's registration requirements do not constitute an affirmative disability or restraint. See Collie v. State, 710 So.2d 1000 (Fla. 2d DCA 1998). And while that court acknowledged a possible exception regarding the Act's employment restriction, at least one federal circuit court has suggested that an effect on private, as opposed to public, employment does not constitute a sufficient plus factor under the "stigma plus" test. See Cutshall v. Sundquist, 193 F.3d 466, 479 (6th Cir.1999) (noting, in the context of a due process challenge to Tennessee's sex offender registration law, that "[c]ourts recognizing a constitutionally protected right to employment have done so in very limited circumstances and have dealt with terminations of government employment where state law or an agreement between the parties purports to limit the ability of the government to terminate the employment.... [W]e have not found[] any case recognizing a general right to private employment."). As well, other state and federal courts have rejected arguments asserting that the sexual offender registration statutes of other states implicate due process protection. See, e.g., Russell v. Gregoire, 124 F.3d 1079 (9th Cir.1997); Lanni v. Engler, 994 F.Supp. 849 (E.D.Mich.1998); Helman v. State, 784 A.2d 1058 (Del.2001); In re Wentworth, 251 Mich.App. 560, 651 N.W.2d 773 (2002); In re M.A.H., 20 S.W.3d 860 (Tex.Ct.App.2000); In re Meyer, 142 Wash.2d 608, 16 P.3d 563 (2001). The issue of whether Florida's Sexual Predator Act implicates due process protections in the context of the "stigma plus" test certainly will come before this Court in its review of Espindola v. State, 855 So.2d 1281 (Fla. 3d DCA 2003), notice of appeal filed, No. SC03-2103 (Fla. Nov.10, 2003), a decision in which the Third District concluded the "stigma plus" test is satisfied. Thus, I believe this Court should not decide this significant issue until it is fully briefed and argued in such a case.