855 So.2d 1281 (2003)
Ferman Carlos ESPINDOLA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-1839.
District Court of Appeal of Florida, Third District.
October 22, 2003.
*1282 Bennett H. Brummer, Public Defender and John Eddy Morrison, Assistant Public Defender, for appellant.
Charlie Crist, Attorney General and Richard L. Polin and Fredericka Sands, Assistant Attorneys General, for appellee.
Before COPE, GREEN, and FLETCHER, JJ.

ON MOTION FOR REHEARING AND/OR CERTIFIED QUESTION
PER CURIAM.
We deny the motion for rehearing,[1] but in light of the recent Supreme Court decisions of Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), and Conn. Dep't of Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003); we withdraw our prior opinion filed on January 15, 2003, and substitute the following in its place.
This is an appeal from a final order declaring the defendant a "sexual predator," in accordance with section 775.21, Florida Statutes (1999), the Florida Sexual Predator Act ("FSPA"). Defendant, an individual who pled guilty to an offense which, pursuant to the FSPA requires that he be designated a "sexual predator," claims that the statute is violative of procedural due process and therefore unconstitutional. As further explained below, we find FSPA to be unconstitutional because it fails to provide minimal procedural due process. Accordingly, we reverse.

I. Facts
The facts of this case are undisputed. The defendant was at a club on South Beach with the co-defendant (who is not a party to this appeal) and the victim. The *1283 co-defendant brought the victim a cocktail, of which she drank a little and the defendant finished. A couple of minutes after drinking the cocktail the defendant fell down unconscious. Soon after, the victim also became dizzy and disoriented. All three left the club, and the co-defendant took them to an unknown hotel and checked into a room. The victim then also lost consciousness. When she regained consciousness, the defendant and co-defendant were allegedly having sexual intercourse with her.
The state charged both men with sexual battery of a physically incapacitated victim by multiple perpetrators. The defendant pled guilty in exchange for a withhold of adjudication and one year community control followed by four years of probation. He has also agreed to assist in the prosecution's case against the co-defendant, which is still pending trial.
Although she remains afraid of the co-defendant, the victim has testified that she does not fear the defendant, and even considers him a friend. Based on this testimony, the state did not seek the standard "stay-away" order in this case.
Since pleading guilty to multiple perpetrator sexual battery would automatically result in the defendant being declared a "sexual predator" under the Act, the defendant filed a motion to declare the Act unconstitutional as violative of procedural due process. The trial court denied the motion before completing the plea and later entered an order finding the defendant to be a sexual predator "subject to community and public notification." The trial court denied a motion to quash that order on the same constitutional grounds, and this appeal ensued.

II. Structure of the Act
Like every other state in the nation, Florida has enacted its version of "Megan's Law,"[2] entitled The Florida Sexual Predator's Act. The Florida legislature has specifically found that:
(a) Repeat sexual offenders, sexual offenders who use physical violence, and sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety. Sexual offenders are extremely likely to use physical violence and to repeat their offenses, and most sexual offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes. This makes the cost of sexual offender victimization to society at large, while incalculable, clearly exorbitant.
(b) The high level of threat that a sexual predator presents to the public safety, and the long-term effects suffered by victims of sex offenses, provide the state with sufficient justification to implement a strategy that includes:
1. Incarcerating sexual predators and maintaining adequate facilities to ensure that decisions to release sexual predators into the community are not made on the basis of inadequate space.

*1284 2. Providing for specialized supervision of sexual predators who are in the community by specially trained probation officers with low caseloads, as described in ss. 947.1405(7) and 948.03(5). The sexual predator is subject to specified terms and conditions implemented at sentencing or at the time of release from incarceration, with a requirement that those who are financially able must pay all or part of the costs of supervision.
3. Requiring the registration of sexual predators, with a requirement that complete and accurate information be maintained and accessible for use by law enforcement authorities, communities, and the public.
4. Providing for community and public notification concerning the presence of sexual predators.
5. Prohibiting sexual predators from working with children, either for compensation or as a volunteer.
* * *
(e) It is the intent of the Legislature to address the problem of sexual predators by:
1. Requiring sexual predators supervised in the community to have special conditions of supervision and to be supervised by probation officers with low caseloads;
2. Requiring sexual predators to register with the Florida Department of Law Enforcement, ...; and
3. Requiring community and public notification of the presence of a sexual predator,....
§ 775.21(3)(a)(b) & (e), Fla. Stat. (1999).
Under FSPA, the sole determination to be made by the trial court, before designating a person a "sexual predator," is whether that person had the prerequisite criminal conviction. See § 775.21(5)(a)(1), Fla. Stat.[3]See also State v. Curtin, 764 So.2d 645, 647 (Fla. 1st DCA 2000) (trial court required to enter finding of sexual predator status where defendant was convicted of crime enumerated in statute). The act of delineating an offender as a sexual predator is mandatory, and the trial court has no discretion. See Kelly v. State, 795 So.2d 135, 137 (Fla. 5th DCA 2001) (stating that "based on the unambiguous language of [FSPA] and the clearly stated legislative intent, ... the Act is mandatory and affords no discretion to the trial judge to designate an individual a sexual predator if the statutory criteria are established.").[4] Indeed, the granting of the state's motion to have a defendant declared a sexual predator has been deemed merely "perfunctory" by the *1285 courts. See e.g., Thomas v. State, 716 So.2d 789, 790 (Fla. 4th DCA 1998).
Once an offender has been designated a "sexual predator," the registration and public notification requirements of FSPA are automatically triggered. See § 775.21(6), Fla. Stat. An offender must, within forty-eight (48) hours, register with the Department of Law Enforcement ("FDLE") or, alternatively, the sheriff's office, and with the Department of Highway Safety and Motor Vehicles ("DMV").[5]See § 775.21(6)(a), (e), & (f), Fla. Stat.[6] Upon registration an offender must provide their name, age, race, sex, date of birth, height, weight, hair and eye color, a photograph, address of legal residence, address of any current temporary residence, "a brief description of the crime or crimes committed by the offender," and genetic material.
FSPA authorizes the DMV to give the offender's photograph to FDLE for purposes of public notification,[7] and also requires FDLE to take the offender's registration information and photograph and *1286 place it on the internet for worldwide distribution. See § 775.21(7)(c), Fla. Stat. County law enforcement also has a statutory duty to provide this same information to the public through other means. See § 775.32(7)(a), Fla. Stat.[8] Broad immunity is afforded anyone acting in good faith in the implementation of FSPA's notification requirements. See § 775.21(9), Fla. Stat.[9]
An offender must appear in person at a DMV office to notify it of any change of residence, which is forwarded to FDLE and posted on its website. See § 775.21(6)(g), Fla. Stat. If an offender plans to move out-of-state, he or she must inform DMV at least forty-eight (48) hours before leaving. See § 775.21(6), Fla. Stat. All of this registration information must be updated by the offender for the "duration of his or her life."[10]See § 775.21(6)(l), Fla. Stat. Failure to comply with these registration requirements is a third-degree felony. See § 775.21(10)(a), Fla. Stat.
Finally, FSPA also automatically prohibits specific offenders, from working "at any business, school, day care center, park, playground, or other place where children regularly congregate ...." § 775.21(10)(b), Fla. Stat.[11]

*1287 III. Procedural Due Process

The defendant argues that the automatic registration and notification requirements of FSPA are violative of his protected right to procedural due process, guaranteed to him by the Fourteenth Amendment to the United States Constitution.[12] Procedural due process questions are examined in two steps:
the first asks whether there exists a liberty or property interest which has been interfered with by the State, ... the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient....
Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted).
The defendant claims that FSPA infringes on his liberty interest in reputation. See, e.g., Wis. v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (stating that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."). However, the law is clear that to trigger procedural due process rights, the defendant must suffer a change in legal status in addition to the "stigma" that would result from the public notification and release of registry regulation. See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (stating that "reputation alone, apart from some more tangible interests such as employment, is [not] either `liberty' or `property' by itself sufficient to invoke the procedural protection of the Due Process Clause."). See also Cutshall v. Sundquist, 193 F.3d 466, 479 (6th Cir.1999) (holding that: "[o]nly where the stigma of damage to a reputation is coupled with another interest, such as employment, is procedural due process triggered."). This has come to be commonly known as the "stigma-plus test." Id.

A. Stigma Plus
The act of being publicly labeled, pursuant to FSPA, a "sexual predator" clearly results in a stigma.[13]See, e.g., Doe v. Pataki, 3 F.Supp.2d 456, 467-68 (S.D.N.Y.1998) (stating that "First, [the offenders] have convincingly demonstrated that, when implemented, the community notification provisions of the Act will likely result in their being branded as convicted sex offenders who may strike again and who therefore pose a danger to the community.... [S]uch widespread dissemination of the above information is likely to carry with it shame, humiliation, ostracism, loss of employment and decreased opportunities for employment, perhaps even physical violence, and a multitude of other adverse consequences. Thus, there is no genuine dispute that the dissemination of the information contemplated by the Act to the community at large is potentially harmful to the [offenders'] personal reputations.").
The state, however, relying on the Supreme Court's opinion in Smith v. Doe, 538 *1288 U.S. 84, , 123 S.Ct. 1140, 1150, 155 L.Ed.2d 164 (2003),[14] argues that the stigma, if any, attached to an offender deemed to be a "sexual predator" comes not from FSPA, but from the publication of the offender's own prior criminal conduct. We disagree. Under FSPA, the information regarding an offender's "sexual predator" status is not only a part of the public record and internet database (as it is in Alaska, Smith's state of origin)[15], but
the sheriff of the county or the chief of police of the municipality where the sexual predator ... maintains a permanent or temporary residence shall notify members of the community and the public....
§ 775.21(7)(a), Fla. Stat. These notification requirements, which mandate affirmative action on the part of law enforcement, go well beyond the mere posting of information in Smith which the Supreme Court found to be merely "passive." Smith, 123 S.Ct. at 1153 (stating that "[t]he notification is a passive one: An individual must seek access to the information."). Thus, the "stigma" here not only from an offender's conviction but also comes from the active dissemination of this conviction and other information by law enforcement.
The defendant here also claims that there are several "plus factors" implicated by FSPA. He asserts, inter alia, that the lifelong registration requirements,[16] employment prohibitions,[17] and inability to seek tort remedies[18] pursuant to the act satisfy the "plus" requirements of the stigma-plus test. We agree, noting that the Supreme Court specifically mentioned employment as a "plus" factor in Paul v. Davis, 424 U.S. at 701, 96 S.Ct. 1155. See also Collie v. State, 710 So.2d 1000, 1012 (Fla. 2d DCA 1998) (finding that employment restrictions infringe on a constitutionally-protected liberty interest).
With facts and statutes similar to those in this case, other courts have also found that these plus factors satisfy the stigmaplus test. See, e.g. Hawai'i v. Bani, 97 Hawai`i 285, 36 P.3d 1255 (2001)[19]; Noble *1289 v. Bd. of Parole, 327 Or. 485, 964 P.2d 990 (1998);[20]Doe v. Attorney Gen., 426 Mass. 136, 686 N.E.2d 1007 (1997).[21]

B. Due Process
Since we have determined that FSPA's registration and public notification provisions implicate the defendant's liberty interests, we must now decide whether the defendant was afforded the requisite procedural safeguards of due process. See Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (procedural due process requires that government act in a fair manner when there is a deprivation of a constitutionally protected property interest).
"The Supreme Court has explained that the central meaning of procedural due process" is that "`[p]arties whose rights are to be affected are entitled to be heard; and in order to enjoy that right they must first be notified. It is equally fundamental [that these rights] must be granted at a meaningful time and in a meaningful manner.'"
Fullmer v. Mich. Dep't of State Police, 207 F.Supp.2d 650, 661 (E.D.Mich.2002) (quoting Fuentes v. Shevin, 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)) (alterations in original).
It is undisputed that the defendant here was provided no process as FSPA requires an automatic determination of "sexual predator status" if one of the enumerated crimes has been committed.[22]See § 775.21(5)(a), Fla. Stat.
However, the state, relying on the Supreme Court's recent opinion in Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98, (2003), claims that the defendant here is not entitled to a hearing at all.[23] In that case the Court found that: *1290 even assuming, arguendo, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute....
[T]he fact that respondent seeks to provethat he is not currently dangerousis of no consequence under Connecticut's Megan's law.... Indeed, the disclaimer on the website explicitly states that respondent's alleged nondangerousness simply does not matter.
Id. at 1164 (emphasis added). Unlike the Connecticut statute, which makes no determination that an offender is dangerous, FSPA specifically provides that sexual predators "present an extreme threat to the public safety." § 775.21(3)(a), Fla. Stat. As a result of this "threat," the legislature has justified its mandate that "sexual predators" follow its registration and notification requirements, as well as the employment restrictions contained in FSPA. See § 775.21(3)(b). Accordingly, we find that the determination of "dangerousness" is of import to FSPA, and that the State's reliance on Conn. Dep't of Pub. Safety v. Doe, infra, is misplaced.
Thus, as several courts of other jurisdictions have done before us, we find that this total failure to provide for a judicial hearing on the risk of the defendant's committing future offenses, makes it violative of procedural due process, and therefore unconstitutional. Fullmer v. Mich. Dep't of State Police, 207 F.Supp.2d 650 (E.D.Mich. 2002); Doe v. Pryor, 61 F.Supp.2d 1224 (M.D.Ala.1999); Doe v. Pataki, 3 F.Supp.2d 456 (S.D.N.Y.1998); Hawai'i v. Bani, 97 Hawai'i 285, 36 P.3d 1255 (2001); Doe v. Attorney Gen., 426 Mass. 136, 686 N.E.2d 1007 (1997).[24]But see, Milks v. State, 848 So.2d 1167 (Fla. 2d DCA 2003) reh'g denied, (July 7, 2003) (relying on Conn. Dep't of Pub. Safety v. Doe, and holding that FSPA does not violate procedural due process principles).

IV. Conclusion
For the foregoing reasons, we find that in the absence of a provision allowing for a hearing to determine whether the defendant presents a danger to the public sufficient to require registration and public notification, the Florida Sexual Predators Act violates procedural due process. Accordingly, the order on appeal is reversed.
Moreover, because the recent Supreme court decisions of Smith v. Doe, and Conn. Dep't of Pub. Safety v. Doe, are factually and legally distinguishable from the case before us, rehearing is denied.
Finally, we note that the Second District recently decided, that FSPA did not violate an offender's procedural due process rights. See Milks v. State, 848 So.2d 1167 (Fla. 2d DCA 2003). Accordingly, we certify conflict with that decision.[25]
*1291 Reversed, rehearing denied and conflict certified.
GREEN and FLETCHER, JJ., concur.
COPE, J. (concurring in part and dissenting in part).
I agree with the majority opinion that the use of the term "predator" renders the statute constitutionally infirm. In this respect, the Florida statute differs from the statutes construed by the United States Supreme Court in Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), and Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).
I disagree with the majority on the remedy. In my view, it is possible to sever the unconstitutional portion of the statute from the remainder.
The Florida Supreme Court has said:
In resolving the issue of severability, this Court has consistently applied the tests set forth in Cramp v. Board of Public Instruction of Orange County, 137 So.2d 828 (Fla.1962):
When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.
Smith v. Department of Insurance, 507 So.2d 1080, 1089-90 (Fla.1987) (citations omitted).
"The Cramp test is a well established component of Florida law. It has been applied repeatedly in countless Florida cases...." Schmitt v. State, 590 So.2d 404, 415 (Fla.1991) (citation and footnote omitted).
Further:
severability does not always depend on the inclusion of a severability clause in a legislative enactment. Such a clause only buttresses the case for severability. If the four parts of the Cramp test are met, severability can occur whether or not the enactment contains a severability clause.
Schmitt, 590 So.2d at 415 n. 12.
Looking at the statute as a whole, the statute accomplishes the following main objectives:
(a) Registration of offenders;
(b) Disclosure of an offender's location and prior criminal record on the Florida Department of Law Enforcement website and through community notification; and
(c) Labeling certain offenders as "predators."
Item (c) is constitutionally infirm, but items (a) and (b) are valid.
Under the Cramp test, the first question is whether the unconstitutional provisions can be separated from the remaining valid provisions. Cramp, 137 So.2d at 830. The answer is yes. The website contains a listing of sex offenders under Florida's various statutes on the subject. See §§ 775.21, 943.0435, 944.607, Fla. Stat. All criminal history information is reported in the same format, with the exception that those who qualify as predators under section 775.21 carry the designation "predator" *1292 in red letters on the summary page listing the various offenders. The term appears again on the individual history page. The term "predator" can be excised while leaving the remaining information about the offender and his criminal record intact. The website and other public notification materials can substitute a neutral term, such as "sexual offender," or "criminal history information," in place of the stricken term.
Similarly, the statute contains regulations for the registration of offenders who meet the statutory criteria. See § 775.21(6), Fla. Stat. The registration requirements remain enforceable. In entering an adjudication under this statute, the court should simply adjudicate that the offender qualifies under section 775.21, Florida Statutes, rather than adjudicating the offender to be a "sexual predator."
The second question under Cramp is whether the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void. 137 So.2d at 830. Again, the answer is yes. The thrust of the statute is to require offender registration and to make offender criminal record information available to the public through the internet and otherwise. These purposes can be accomplished even if the "predator" label is stricken.
The third question under Cramp is whether the good and bad features are not so inseparable in substance that it can be said the Legislature would have passed the one without the other. 137 So.2d at 830. There is no doubt that the Legislature would have passed this statute regardless of whether the term "predator" was included.
The fourth question under Cramp is whether an act complete in itself remains after the invalid provisions are stricken. Again, the answer is yes. The statute adequately defines who is covered, what registration procedures must be followed, and what mechanism is created for public disclosure. The only modification relates to the use of the term "predator."
The State argues that the statute should be upheld in its entirety under Smith v. Doe and Connecticut Department of Public Safety v. Doe, but the State is incorrect. The Alaska and Connecticut statutes at issue in those cases did not use the term "predator" or any other terminology suggesting that the offender is a present danger to the public.
I would urge the Florida Legislature to revisit the statute at its earliest opportunity. By adjusting the terminology, the constitutional defect in this statute can be corrected and the statute brought into compliance with Smith v. Doe and Connecticut Department of Public Safety v. Doe.
It is clear that there must be uniform statewide procedures under section 775.21, and equally clear that the Florida Supreme Court must authoritatively resolve the constitutional issue. Accordingly, it is my view that we should stay our mandate pending review in the Florida Supreme Court.
NOTES
[1] We also deny the State's motion to certify on grounds of great public importance, but, as will be discussed forthcoming, certify on grounds of inter-district conflict.
[2] The "Megan's Law" was named in memory of Megan Kanka, a seven year old New Jersey girl who was sexually assaulted and murdered by a neighbor twice previously convicted of sexual offenses. See Doe v. Pataki, 120 F.3d 1263, 1265 n. 1 (2d Cir.1997). The New Jersey legislature enacted Megan's Law to "identify potential recidivists and alert the public when necessary for the public safety." See Doe v. Dep't of Pub. Safety, 271 F.3d 38, 42 n. 4 (2d Cir.2001) (quoting Paul P. v. Farmer, 227 F.3d 98, 99 (3d Cir.2000)), rev'd, Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).
[3] This section provides that:

(5) Sexual predator designation.... an offender is designated as a sexual predator as follows:
(a)1. An offender who meets the sexual predator criteria described in paragraph (4)(c) who is before the court for sentencing for a current offense committed on or after October 1, 1996, is a sexual predator, and the sentencing court must make a written finding at the time of sentencing that the offender is a sexual predator, and the clerk of the court shall transmit a copy of the order containing the written finding to the department within 48 hours after the entry of the order[.]
[4] A defendant does not even have to be present for the trial court to impose the "sexual predator" designation. See Burkett v. State, 731 So.2d 695, 698 (Fla. 2d DCA 1998) (sexual predator designation is a "collateral consequence" of defendant's crime, and defendant need not be present at hearing where designation is imposed).
[5] The offender must personally go to the offices of these departments to register.
[6] This section provides in pertinent part:

(6) Registration.
(a) A sexual predator must register with the department by providing the following information to the department:
1. Name, social security number, age, race, sex, date of birth, height, weight, hair and eye color, photograph, address of legal residence and address of any current temporary residence, within the state or out of state, including a rural route address and a post office box, date and place of any employment, date and place of each conviction, fingerprints, and a brief description of the crime or crimes committed by the offender....
2. Any other information determined necessary by the department, including criminal and corrections records; nonprivileged personnel, treatment, and abuse registry records; and evidentiary genetic markers when available.
* * * *
(e) If the sexual predator is not in the custody or control of, or under the supervision of, the Department of Corrections, or is not in the custody of a private correctional facility, and establishes or maintains a residence in the state, the sexual predator shall initially register in person at an office of the department, or at the sheriff's office in the county in which the predator establishes or maintains a residence, within 48 hours after establishing permanent or temporary residence in this state. If a sexual predator registers with the sheriff's office, the sheriff shall take a photograph and a set of fingerprints of the predator and forward the photographs and fingerprints to the department, along with the information that the predator is required to provide pursuant to this section.
(f) Within 48 hours after the initial registration required under paragraph (a) or paragraph (e), a sexual predator who is not incarcerated and who resides in the community, including a sexual predator under the supervision of the Department of Corrections, shall register in person at a driver's license office of the Department of Highway Safety and Motor Vehicles and shall present proof of initial registration....
[7] FSPA specifically provides in pertinent part that:

(g) Each time a sexual predator's driver's license or identification card is subject to renewal, and within 48 hours after any change of the predator's residence, the predator shall report in person to a driver's license office, and shall be subject to the requirements specified in paragraph (f). The Department of Highway Safety and Motor Vehicles shall forward to the department and to the Department of Corrections all photographs and information provided by sexual predators. Notwithstanding the restrictions set forth in s. 322.142, the Department of Highway Safety and Motor Vehicles is authorized to release a reproduction of a color-photograph or digital-image license to the Department of Law Enforcement for purposes of public notification of sexual predators as provided in this section.
§ 775.21(6)(g), Fla. Stat.
[8] Specifically, this section provides that:

(7) Community and public notification.
(a) Law enforcement agencies must inform members of the community and the public of a sexual predator's presence. Upon notification of the presence of a sexual predator, the sheriff of the county or the chief of police of the municipality where the sexual predator establishes or maintains a permanent or temporary residence shall notify members of the community and the public of the presence of the sexual predator in a manner deemed appropriate by the sheriff or the chief of police. Within 48 hours after receiving notification of the presence of a sexual predator, the sheriff of the county or the chief of police of the municipality where the sexual predator temporarily or permanently resides shall notify each licensed day care center, elementary school, middle school, and high school within a 1 mile radius of the temporary or permanent residence of the sexual predator of the presence of the sexual predator. Information provided to members of the community and the public regarding a sexual predator must include:
1. The name of the sexual predator;
2. A description of the sexual predator, including a photograph;
3. The sexual predator's current address, including the name of the county or municipality if known;
4. The circumstances of the sexual predator's offense or offenses; and
5. Whether the victim of the sexual predator's offense or offenses was, at the time of the offense, a minor or an adult.
[9] This section specifically provides that:

(9) Immunity.When the court has made a written finding that an offender is a sexual predator, an elected or appointed official, public employee, school administrator or employee, agency, or any individual or entity acting at the request or upon the direction of any law enforcement agency is immune from civil liability for damages resulting from the release of information under this section.
[10] A person can, however, petition the court for relief if after twenty (20) years he or she has never been arrested for any subsequent felony or misdemeanor.
[11] This section provides:

(b) A sexual predator who has been convicted of or found to have committed, or has pled nolo contendere or guilty to, regardless of adjudication, any violation, or attempted violation, of s. 794.011(2), (3), (4), (5), or (8); s. 794.023; s. 800.04; s. 827.071; s. 847.0133; or s. 847.0145, or a violation of a similar law of another jurisdiction, when the victim of the offense was a minor, and who works, whether for compensation or as a volunteer, at any business, school, day care center, park, playground, or other place where children regularly congregate, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[12] The Fourteenth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.
[13] "A `stigma' is [a] mark or token of infamy, disgrace, or reproach...." Doe v. Dep't of Pub. Safety, 271 F.3d at 47 (quoting The American Heritage Dictionary of the English Language 1702 (4th ed.2000)) (alteration in original).
[14] In Smith v. Doe, convicted sex offenders challenged the retroactive application of Alaska's Sex Offender Registration Act as a violation of the Ex Post Facto clause. The Court held that Alaska's act was non-punitive, and that its retroactive application was not constitutionally infirm. 123 S.Ct. at 1154.
[15] Under Alaska law, information contained in the state's central registry

is confidential and not subject to public disclosure except as to the sex offender's... name, aliases, address, photograph, physical description, description of motor vehicles, license numbers of motor vehicles, and vehicle identification numbers of motor vehicles, place of employment, date of birth, crime for which convicted, date of conviction, place and court of conviction, length and conditions of sentence,.... Alaska Stat. § 18.65.087(b) (2000).
[16] See § 775.21(6), Fla. Stat.
[17] See § 775.21(10)(b), Fla. Stat.
[18] See § 775.21(9), Fla. Stat.
[19] The court provided as additional "plus" factors that:

Potential employers and landlords will foreseeably be reluctant to employ or rent to [the defendant] once they learn of his status as a "sex offender." ... Indeed, the public disclosure provisions of [the act] can adversely affect an offender's personal and professional life, employability, associations with neighbors, and choice of housing.... In addition, public disclosure may encourage vigilantism and may expose the offender to physical violence.
Bani, 36 P.3d at 1265. (citations omitted).
[20] Describing the liberty interest that is lost by a label of "predatory sex offender," the court wrote:

Finally, and perhaps most importantly, it is an interest in avoiding the social ostracism, loss of employment opportunities, and significant likelihood of verbal and perhaps, even physical harassment likely to follow from designation. In our view, that interest, when combined with the obvious reputational interest that is at stake, qualifies as a "liberty" interest within the meaning of the Due Process Clause.
Noble, 964 P.2d at 995-96.
[21] The court in Doe found that:

The combination of the following circumstances persuades us that the plaintiff has a liberty and privacy interest protected by the Constitution ... that entitles him to procedural due process: (1) the requirement that he register with local police; (2) the disclosure of accumulated personal information on request; (3) the possible harm to his earning capacity; (4) the harm to his reputation; and, most important, (5) the statutory branding of him as a public danger, a sex offender.
686 N.E.2d at 1013.
[22] The defendant was charged with, and pled guilty to sexual battery on a physically incapacitated victim by multiple perpetrators. A single conviction for a multiple perpetrator sexual battery of a physically incapacitated victim automatically "classified" the defendant as a sexual predator. See § 775.21(4)(a), Fla. Stat. (a single capital, life, or first-degree felony violation of chapter 794 automatically qualifies person as "sexual predator"); § 794.011(4)(a), Fla. Stat. (sexual battery on physically incapacitated victim is a first-degree felony); § 794.023(2)(b), Fla. Stat. (reclassifying all first degree sexual batteries as life felonies if committed by multiple perpetrators).
[23] In that case, similar to the case here, the respondent claimed that he was "not a `dangerous sexual offender,' and that the Connecticut law `deprive[d] him of a liberty interestreputation combined with the alteration of his status under state lawwithout notice or a meaningful opportunity to be heard.'" Conn. Dep't of Pub. Safety v. Doe, 123 S.Ct. at 1163-64.
[24] New Jersey's original "Megan's Law" did not provide for a judicial hearing on the risk of future offenses, but the state's Supreme Court read such a requirement into the statute. See Doe v. Poritz, 142 N.J. 1, 662 A.2d 367, 381-85 (1995). Without this judicial amendment to the statute it would have been unconstitutional. Id. at 421-22.

We however, cannot judicially amend section 775.21, as that province in Florida is left solely to the legislature. See State v. Keaton, 371 So.2d 86, 89 (Fla.1979) (courts may not vary the intent of the legislature with respect to the meaning of a statute, in order to render it constitutional).
[25] In Milks the Second District declined to certify conflict with our original opinion because it was not final and "therefore may be subject to withdrawal or revision."