894 So.2d 924 (2005)
Everett Ward MILKS, Petitioner,
v.
STATE of Florida, Respondent.
State of Florida, Appellant,
v.
Ferman Carlos Espindola, Appellee.
Nos. SC03-1321, SC03-2103.
Supreme Court of Florida.
February 3, 2005.
*925 James Marion Moorman, Public Defender and Anthony C. Musto, Special Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General and Christopher M. Kise, Solicitor General, Tallahassee, FL; Robert J. Krauss, Chief Assistant Attorney General and Katherine V. Blanco, Senior Assistant Attorney General, Tampa, FL, for Respondent.
Charles J. Crist, Jr., Attorney General and Christopher M. Kise, Solicitor General, Tallahassee, FL, and Richard L. Polin, Criminal Appeals Bureau Chief, Miami, FL, for Appellant.
Bennett H. Brummer, Public Defender and John Eddy Morrison, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Appellee.
BELL, J.
We have before us two cases challenging the constitutionality of the Florida Sexual Predators Act, section 775.21, Florida Statutes (2003). In Milks v. State, 848 So.2d 1167 (Fla. 2d DCA 2003), the Second District Court of Appeal declared the Act constitutional, rejecting procedural-due-process and separation-of-powers challenges. In Espindola v. State, 855 So.2d 1281 (Fla. 3d DCA 2003), the Third District Court of Appeal declared the Act unconstitutional on procedural-due-process grounds.[1] We approve the decision of the Second District in Milks and reverse the decision of the Third District in Espindola. We hold that the Act does not violate procedural due process or separation of powers and, as against these challenges, is constitutional. We decline at this time to consider the substantive-due-process and equal-protection challenges briefed by the parties but not addressed by the district courts below.

I. BACKGROUND
The Florida Sexual Predators Act lists certain offenses (and combinations of offenses) and mandates that a person convicted of any such offense be designated a "sexual predator." See § 775.21(4)(a)(1), Fla. Stat. (2003) (sexual predator criteria); § 775.21(5), Fla. Stat. (2003) (designation). Once designated as such, a "sexual predator" is subject, among other things, to the Act's registration and public-notification requirements. § 775.21(6), Fla. Stat. (2003) (registration); § 775.21(7), Fla. Stat. (2003) (public notification). The Act neither provides for any predesignation (or preregistration or pre-public-notification) hearing on the issue of an offender's actual dangerousness, nor does it provide the trial court with any discretion on the matter. If a person has been convicted of an enumerated offense, he must be designated by the court as a "sexual predator," and he is automatically subject to the Act's requirements.[2]
*926 In Milks v. State, 848 So.2d 1167 (Fla. 2d DCA 2003), the Second District declared the Act constitutional. The court rejected Milks' separation-of-powers challenge, citing Kelly v. State, 795 So.2d 135 (Fla. 5th DCA 2001) (rejecting separation-of-powers challenge to the Act), and State v. Cotton, 769 So.2d 345 (Fla.2000) (rejecting separation-of-powers challenge to the Prison Releasee Reoffender Punishment Act). See Milks, 848 So.2d at 1169. The Second District also rejected Milks' procedural-due-process challenge. Citing Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), the court held that "due process did not entitle the defendant to a hearing to establish whether he or she was dangerous, as that fact was not material under the statute." Milks, 848 So.2d at 1169.
In Espindola v. State, 855 So.2d 1281 (Fla. 3d DCA 2003), the Third District declared the Act unconstitutional on procedural-due-process grounds. "[I]n the absence of a provision allowing for a hearing to determine whether the defendant presents a danger to the public sufficient to require registration and public notification," id. at 1290, the Third District held that the Act "fails to provide minimal procedural due process." Id. at 1282. Relying on the statement of legislative findings contained in the Act, which state, among other things, that sexual predators "present an extreme threat to the public safety," § 775.21(3)(a), Fla. Stat. (2003), justifying the Act's registration and notification requirements, § 775.21(3)(b), Fla. Stat. (2003), the Third District concluded that "the determination of `dangerousness' is of import to [the Act]," and, consequently, the Act's "total failure to provide for a judicial hearing on the risk of the defendant's committing future offenses[ ] makes it violative of procedural due process." Espindola, 855 So.2d at 1290. Because it concluded that "dangerousness" was a material element under the Act, the Third District held that Doe was not controlling. Id.

II. DISCUSSION

A. Procedural Due Process
Espindola and Milks argue that the Act violates their rights to procedural due process. See U.S. Const. amend. XIV, § 1 ("No State shall ... deprive any person of life, liberty, or property, without due process of law."); art. I, § 9, Fla. Const. ("No person shall be deprived of life, liberty, or property without due process of law...."). This claim is based on the fact that the Act does not provide any procedure for determining in individual cases whether or not a person with an Act-qualifying conviction actually presents a danger to the community that would justify the imposition of the Act's requirements, particularly the Act's registration and public-notification requirements. The United States Supreme Court rejected an identical challenge to Connecticut's sex offender law in Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), and we see no reason why the same result is not mandated here.
*927 In Doe, the United States Supreme Court considered a procedural-due-process challenge to Connecticut's sex offender law, which "applies to all persons convicted of criminal offenses against a minor, violent and nonviolent sexual offenses, and felonies committed for a sexual purpose." 538 U.S. at 4, 123 S.Ct. 1160. The federal circuit court held that Connecticut's Act "violated the Due Process Clause because officials did not afford registrants a predeprivation hearing to determine whether they are likely to be `currently dangerous.'" Id. at 4, 123 S.Ct. 1160 (quoting Doe v. Department of Public Safety, 271 F.3d 38, 46 (2d Cir.2001)). The Supreme Court, noting that "Connecticut ... has decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness," reversed the circuit court "because due process does not require the opportunity to prove a fact [e.g., current dangerousness] that is not material to the State's statutory scheme." Doe, 538 U.S. at 4, 123 S.Ct. 1160. The Court went on to explain that
the fact that respondent seeks to prove  that he is not currently dangerous  is of no consequence under Connecticut's Megan's Law.... [T]he law's requirements turn on an offender's conviction alone  a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest. No other fact is relevant to the disclosure of registrants' information....
In short, even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of all sex offenders  currently dangerous or not  must be publicly disclosed.... [A]ny hearing on current dangerousness [would be] a bootless exercise.
Id. at 7-8, 123 S.Ct. 1160 (citations omitted).
The same analysis applies here.[3] Just as the Connecticut Legislature did, the Florida Legislature has decided that the Act's designation, registration, and public-notification requirements, as well as the Act's other provisions, such as its employment restrictions, "shall be based on the fact of previous conviction, not the fact of current dangerousness." Id. at 4, 123 S.Ct. 1160.[4] To provide Espindola and Milks with hearings at which they could contest the fact of current dangerousness would be pointless. Even if they could *928 prove that they present absolutely no threat to the public safety, the Act would still require that they be designated as "sexual predators," that they register, and that the public be notified. As the Court held in Doe, "due process does not require the opportunity to prove a fact [here, that one is not dangerous] that is not material to the State's statutory scheme." 538 U.S. at 4, 123 S.Ct. 1160.[5] The only material fact under Florida's statutory scheme, just as under Connecticut's, is the fact of a previous conviction  all of the burdens imposed by the Act, from the designation as a "sexual predator" to the registration and public-notification requirements to the employment restrictions, flow from the fact of a previous conviction  and both Espindola and Milks received "a procedurally safeguarded opportunity" to contest that fact. Id. at 7, 123 S.Ct. 1160. That is all that procedural due process requires.[6]

B. Separation of Powers
The Act vests no discretion in the trial courts with respect to determining *929 whether the Act should apply to a particular qualifying offender. See § 775.21(4)(a)(1), Fla. Stat. (2003); Robinson, 873 So.2d at 1212 ("Under the Act, the sole criterion for determining whether a defendant must be designated a `sexual predator' is whether the defendant was convicted of a qualifying offense."). Espindola and Milks argue that this lack of discretion renders the Act violative of the Florida Constitution's separation-of-powers provision. They rely on Judge Padavano's concurring opinion in State v. Curtin, 764 So.2d 645 (Fla. 1st DCA 2000), where he suggested the possible constitutional infirmity because the statute "appears to `wrest from [the] courts the final discretion' to decide whether an offender should be declared a sexual predator." Id. at 648 (Padavano, J., concurring) (alteration in original) (quoting State v. Benitez, 395 So.2d 514, 519 (Fla.1981)).
We reject this argument. Although it is argued that the Act "wrest[s] from [the] courts the final discretion to decide whether an offender should be declared a sexual predator," Curtin, 764 So.2d at 648 (Padavano, J., concurring) (internal quotation marks omitted), this is not a constitutional infirmity. The Act is an exercise of the public-policy-making function of the Legislature to declare that persons who have been convicted of certain offenses should be designated as "sexual predators" and should be subjected to the registration, public-notification, and other requirements of the Act. It seems apparent that the real objection to the Act is that it "creates an inflexible rule that will stigmatize some offenders who are not within the three distinct classes of offenders the Legislature targeted in section 775.21(3)(a)." Id. The Act's inflexibility might well be a shortcoming, but it is not a separation-of-powers problem.

III. CONCLUSION
For the reasons expressed above, we approve the decision of the Second District in Milks and reverse the decision of the Third District in Espindola.
It is so ordered.
WELLS, LEWIS, and CANTERO, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE, C.J., and QUINCE, J., concur.
ANSTEAD, J., concurring in part and dissenting in part.
I cannot agree with the majority that the Third District in Espindola has erroneously misconstrued the provisions of Florida's Sexual Predator Act in distinguishing Florida's Act from the Connecticut Sexual Offender Registration Act approved by the U.S. Supreme Court in Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).
What the majority fails to confront are not only the express legislative findings contained in Florida's Act concerning future dangerousness, but more importantly, the Act's explicit adoption of the term "sexual predator" rather than "sexual offender" in its registration scheme. It is one thing to provide the public with public information about sexual offenders, but quite another to tell the public that the State has determined that certain persons are "sexual predators." It is pure sophistry to suggest that these actions are the same.[7]
*930 Obviously, no one's popularity is going to be enhanced by having his or her name appear on a list of sexual offenders. But, as the U.S. Supreme Court has noted in Doe, that listing simply comes with having been convicted of a sexual offense. While it is true that many will conclude that any person convicted of a sexual offense will always be dangerous, that will be an individual determination based on accurate information. For that reason, I agree with the majority and the U.S. Supreme Court in Doe that states have broad authority to provide this information to the public. That is what Connecticut did, and the U.S. Supreme Court correctly approved that action.
However, it is a far different matter when the State decides to classify certain individuals as "sexual predators" and to disseminate information about those "predators" to the public. Under such a scheme, no individual determination of dangerousness need be made because the State has already done that for us. And, of course, no one would challenge the State's determination of "predator" status. The public has a right to rely on the accuracy of that determination and will do so. No reasonable person would take the chance not to rely on such determination. It is in making this irrefutable conclusion that someone is a "sexual predator" without affording that someone an opportunity to object that Florida's Act runs afoul of constitutional due process protections.
As noted above, unlike the sex offender registration laws in some other states, Florida's Act designates offenders not merely as "sex offenders," but as "sexual predators." Common sense tells us that there is a clear difference between an "offender" and a "predator." For example, Merriam-Webster's Collegiate Dictionary, 917 (10th ed.1994), defines "predator" as "one that preys, destroys, or devours." Other reliable authorities contain similar definitions. Accordingly, by notifying the public as to the presence of "sexual predators," Florida's Act goes well beyond merely listing persons who have previously been convicted of a sex offense. In actual effect, by designating these offenders as "sexual predators," the State is clearly stating that the predator is dangerous and the public should beware.

Due Process
The United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In examining a procedural due process claim, a court first must determine whether a State action impacts a citizen's liberty or property interest, and second, whether the procedures provided by the State to challenge that action are adequate. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).
For example, Espindola contends that the Florida Sexual Predators Act interferes with his constitutionally protected liberty interests in reputation. He claims that the Act, by publicly designating him as a "sexual predator," injures his reputation and defames him. To determine whether his interests rise to the level of constitutionally protected liberty interests, the U.S. Supreme Court has ruled that we must apply the so-called "stigma-plus" test, which requires a showing not only of governmental action sufficiently derogatory to injure a person's reputation (i.e., "stigma") but also some tangible and material state-imposed burden or alteration of the individual's legal status. See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that "reputation *931 alone, apart from some more tangible interests ... is [n]either `liberty' [n]or `property' by itself sufficient to invoke the procedural protection of the Due Process Clause").
In State v. Robinson, 873 So.2d 1205 (Fla.2004), this Court has already applied the "stigma-plus" test to the Florida Sexual Predators Act, found that the Act did implicate a constitutionally protected liberty interest in reputation, and found the Act unconstitutional as applied. Robinson, 873 So.2d at 1214 ("We ... hold that the designation as a sexual predator constitutes a deprivation of a protected liberty interest.").[8] We concluded that being "designat[ed] as a `sexual predator' certainly constitutes a stigma. No one can deny that such a designation affects one's good name and reputation." Robinson, 873 So.2d at 1213 (footnote omitted).[9]
In Robinson, we also held that some harm beyond reputational stigma alone must be demonstrated to invoke procedural due process concerns. See Robinson, 873 So.2d at 1213. "[T]o establish [a] depriv[ation] of a liberty interest in reputation sufficient to implicate the procedural protection of the due process clause, [one] must show stigma plus the alteration or extinguishment of some other right or status." Doe v. Pryor, 61 F.Supp.2d 1224, 1231 (M.D.Ala.1999); see also Doe v. Dep't of Pub. Safety, 271 F.3d 38, 56 (2d Cir.2001) ("[One] establishes a `plus' factor for purposes of the Paul v. Davis `stigma plus' test only if he or she points to an indicium of material government involvement unique to the government's public role that distinguishes his or her claim from a traditional ... defamation suit."), rev'd on other grounds, Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). Again, however, we have already answered this question in the affirmative in Robinson where, after finding that Florida's Act imposed a stigma on those designated as "sexual predators," the Court held that the Act also created three plus factors  i.e., "additional limitations [that] implicate more than merely a stigma to one's reputation," 873 So.2d at 1214:
We believe the Act imposes more than a stigma.... [U]nder the Act, a person designated a sexual predator is subject to life-long registration requirements. See § 775.21(5), Fla. Stat. (Supp.1998). *932 Further, as another court has noted, "[t]hese statutes create no mere informational reporting requirement, the violation of which is punished with a small fine." Giorgetti v. State, 821 So.2d 417, 422 (Fla. 4th DCA 2002), approved, 868 So.2d 512 (Fla.2004). To the contrary, the failure of a designated sexual offender to comply with these and other requirements of the Act constitutes a third-degree felony. § 775.21(10). Moreover, a designated sexual predator is prohibited from seeking certain tort remedies, see § 775.21(9), and from working "where children regularly congregate." § 775.21(10)(b).
Robinson, 873 So.2d at 1213.[10]
Since Robinson has established that Florida's Act implicates constitutionally protected liberty interests, the question then becomes whether the state procedures for protecting those rights are constitutionally sufficient. Kentucky Dep't of Corrections, 490 U.S. at 460, 109 S.Ct. 1904. Espindola contends, and the Third District in Espindola concluded, that the Act's failure to provide any procedure to contest the designation of someone as a "sexual predator" violates the right to procedural due process. See Espindola, 855 So.2d at 1290 ("[The] total failure to provide for a judicial hearing on the risk of the defendant's committing future offenses makes it violative of procedural due process and therefore unconstitutional.").
In Doe, the United States Supreme Court considered a similar procedural due process challenge to Connecticut's sex offender law. Importantly, the Connecticut Act simply requires the registration of certain sex offenders without designating them as "sexual predators." The Supreme Court upheld the Connecticut Act and distinguished its provisions from other cases where the Court had held that due process requires a hearing before some specific classification or designation is made. The Court noted that "Connecticut ... has decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness.... We therefore reverse the judgment of the Court of Appeals because due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." Doe, 538 U.S. at 4, 123 S.Ct. 1160.
*933 However, as the Third District in Espindola has explicitly noted, Doe is not controlling here because Connecticut's Act differs from Florida's in that Connecticut's "makes no determination that an offender is dangerous, [while Florida's] specifically provides that sexual predators `present an extreme threat to the public safety.'" Espindola, 855 So.2d at 1290 (quoting § 775.21(3)(a), Fla. Stat. (1999)). Therefore, the Third District held that "the determination of `dangerousness' is of import to [the Florida Sexual Predators Act], and ... the State's reliance on [Doe] is misplaced." Id. In other words, Connecticut's Act simply designates offenders to be what they obviously are, "sexual offenders," while Florida's Act goes further and designates those offenders as "sexual predators," a designation that may or may not be warranted, depending on the circumstances of each designation.

Conclusion
Florida, like Connecticut, has decided that the public must have access to information about all convicted sex offenders, currently dangerous or not, and that those convicted sex offenders must face certain sanctions. That is not a problem. However, unlike Connecticut, Florida has not stopped there. Rather, Florida has gone further and decided it would also classify such persons as "sexual predators." It is this additional classification that invokes due process concerns. Under Robinson, Espindola and Milks have demonstrated that the Florida Sexual Predators Act implicates their constitutionally protected liberty interests, triggering due process protections. Further, because Florida's Act automatically designates them as "sexual predators," they must be provided with a fair opportunity to contest that fact, if we are to honor the principles of procedural due process guaranteed by the United States Constitution.
Finally, because I conclude that the flaw in Florida's statutory scheme is the use of the word "predator," I would accept the State's invitation to excise the word "predator" from Florida's sexual offender registration scheme and uphold the Act as excised.[11] However, if we do not take this *934 action, I would affirm the holding in Espindola that the Act violates the defendants' rights to due process in not allowing them to contest being classified as a "predator."
NOTES
[1] We have jurisdiction under article V, section 3(b)(1) and (3) of the Florida Constitution.
[2] The 1995 version of the Act, the first version to include a public-notification provision, did provide for a pre-public-notification "dangerousness" hearing. Before one designated as a "sexual predator" could be subject to the 1995 Act's public-notification requirements, the circuit court would have to determine by a preponderance of the evidence that "the sexual predator poses a threat to the public" and that "notice to the community where the sexual predator temporarily or permanently resides is necessary to protect public safety." § 775.225, Fla. Stat. (1995). The Legislature's 1996 revisions, however, removed the pre-public-notification "dangerousness" hearing and made public notification dependent only on one's designation as a sexual predator, see § 775.21(7), Fla. Stat. (Supp.1996), which itself did not require a finding of "dangerousness," only the existence of a qualifying conviction (or combination of convictions).
[3] In Doe, the Court assumed (without deciding) that the Connecticut Act implicated constitutionally protected liberty interests. 538 U.S. at 7, 123 S.Ct. 1160. The question of procedural due process (or, for that matter, substantive due process) does not arise, of course, unless governmental action implicates a constitutionally protected interest. But the Court found it unnecessary to decide whether the Act implicated constitutionally protected liberty interests because even assuming that it did, the Act provided constitutionally adequate procedures. Id. Although it is also unnecessary for us to decide the issue, for the same reasons the Court in Doe found it unnecessary, we have in fact already held that the Florida Sexual Predators Act implicates constitutionally protected liberty interests. In State v. Robinson, 873 So.2d 1205 (Fla.2004), we applied the so-called "stigma-plus" test of Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and held that the Act implicates the constitutionally protected liberty interest in one's reputation. Robinson, 873 So.2d at 1213-14. The only question, therefore, is whether the Act provides constitutionally adequate procedures before depriving a person of this constitutionally protected interest. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). As we will explain below, the answer to this question is "yes, it does."
[4] See supra note 2 (noting that the 1996 version of the Act removed the pre-public-notification "dangerousness" hearing and made public notification, as well as designation and registration, dependent only on the fact of a previous conviction). The Third District attempted to distinguish Florida's Act from Connecticut's, and thereby take Florida's Act outside the scope of Doe, by emphasizing the express legislative findings contained in Florida's Act. The Florida Legislature found, among other things, that sexual predators "present an extreme threat to the public safety," § 775.21(3)(a), Fla. Stat. (2003), and that this threat justified the Act's registration and public-notification requirements. § 775.21(3)(b), Fla. Stat. (2003). The Third District is simply incorrect in concluding that these legislative findings make "dangerousness" a material fact under the Act. The Act's substantive provisions clearly make the Act's requirements turn only on the fact of previous conviction, not the fact of dangerousness. In fact, the 1996 version of the Act eliminated the pre-public-notification "dangerousness" hearing and made the public-notification provision apply automatically upon designation and registration, which themselves applied automatically upon the fact of previous conviction. See Robinson, 873 So.2d at 1212 ("Under the Act, the sole criterion for determining whether a defendant must be designated a `sexual predator' is whether the defendant was convicted of a qualifying offense."). The legislative findings on which the Third District relied do not make any of the Act's provisions turn on a finding of dangerousness. Quite to the contrary, those findings serve as the Legislature's asserted justification for not requiring individualized findings of dangerousness before applying the Act's provisions, that is, for treating as a class those convicted of certain crimes and applying the Act's requirements to them all.
[5] Whether the statutory scheme must make "dangerousness" a material factor (before the State may apply any or all of the Act's provisions, or, as the dissent suggests, before the State may designate a person as a "sexual predator" rather than merely a "sexual offender") is a question of substantive due process. The substantive-due-process issue and possible equal-protection issues were not addressed by either district court below, and for this reason we do not consider them here. We express no opinion as to the merits of any of these possible claims.
[6] The dissent attempts to distinguish Florida's Act from Connecticut's, and thereby take Florida's Act outside the scope of Doe, by noting that Florida's Act designates a person convicted of an Act-qualifying crime as a "sexual predator," whereas Connecticut's Act employs the term "sexual offender." But in the context of our procedural-due-process analysis, this distinction is immaterial. (We express no opinion as to whether this creates a substantive due process problem. See supra note 5.) Regardless of the term employed, the requirements that one be designated as such, and then subject to registration and public notification, implicate the constitutionally protected interest in one's reputation. We do not think the dissent is suggesting that no due process protections would apply if the Act simply used the term "offender" rather than "predator." So the question, either way, is whether the person (whether he be designated a "sexual predator" or a "sexual offender") has been afforded a constitutionally safeguarded opportunity to the contest the facts which the State must prove before depriving him of his liberty interest in his reputation. Because all the State must prove under the Act is whether the person has been convicted of an Act-qualifying offense, both Espindola and Milks have been afforded constitutionally adequate procedures.
[7] The majority also fails to set out the facts in Espindola. Those facts clearly demonstrate a substantial issue as to whether Espindola should be classified as a "sexual predator."
[8] In Robinson, this Court held that application of the Act to a person convicted of a crime that concededly involved no sexual component violated substantive due process. 873 So.2d at 1217.
[9] See also Fullmer v. Michigan Dep't of State Police, 207 F.Supp.2d 650, 659 (E.D.Mich.2002) (plaintiff met first prong of "stigma plus" due to stigma associated with being falsely labeled as a danger to the community when registry included both currently dangerous offenders and those who are not likely to become dangerous again); Doe # 1 v. Williams, 167 F.Supp.2d 45, 51 (D.D.C.2001) ("It is beyond dispute that public notification pursuant to the [District of Columbia sex offender law] results in stigma."); Doe v. Pryor, 61 F.Supp.2d 1224, 1231 (M.D.Ala.1999) ("While it might seem that a convicted felon could have little left of his good name, community notification ... will inflict a greater stigma than would result from conviction alone" because "[n]otification will clearly brand the plaintiff as a `criminal sex offender' ... a `badge of infamy' that ... strongly implies that he is a likely recidivist and a danger to his community."); Doe v. Pataki, 3 F.Supp.2d 456, 468 (S.D.N.Y.1998) (because information required by the New York State Sex Offender Registration Act "is likely to carry with it shame, humiliation, ostracism, loss of employment and decreased opportunities for employment, perhaps even physical violence, and a multitude of other adverse consequences ... there is no genuine dispute that the dissemination of the information contemplated by the Act to the community at large is potentially harmful to plaintiffs' personal reputations.").
[10] See also Doe v. Dep't of Pub. Safety, 271 F.3d 38, 56-57 (2d Cir.2001) (holding that the "extensive and onerous" registration requirements imposed by Connecticut's sex offender law "constitute a `plus' factor" because "[t]hose obligations (1) alter [one's] legal status and (2) are `governmental in nature' insofar as they could not be imposed by a private actor ... and therefore differentiate the plaintiff's complaint from a traditional defamation claim"), rev'd on other grounds, Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003); Doe v. Pryor, 61 F.Supp.2d 1224, 1231-32 (M.D.Ala.1999) ("[Alabama's] Community Notification Act deprives the plaintiff of rights previously held under State law. By virtue of having been deemed a `criminal sex offender' within the meaning of the Act, the plaintiff no longer has the right to establish a new residence without giving prior notice to government officials. He no longer has the right to live and work within 1,000 feet of a school or childcare facility.... These additional deprivations therefore suffice to establish the `plus' part of the stigma-plus test.") (citations omitted); Doe v. Pataki, 3 F.Supp.2d 456, 468 (S.D.N.Y.1998) ("[T]he registration provisions of the Act place a `tangible burden' on plaintiffs, potentially for the rest of their lives.... In light of these requirements placed on registrants, there can be no genuine dispute that registration alters the legal status of all convicted sex offenders subject to the Act for a minimum of ten years and, for some, permanently. These requirements obviously encroach on the liberty of convicted sex offenders, and, therefore, they suffer a tangible impairment of a right in addition to mere harm to reputation.").
[11] On this point I agree with the opinion of Judge Cope in the Third District:

I agree with the majority opinion that the use of the term "predator" renders the statute constitutionally infirm. In this respect, the Florida statute differs from the statutes construed by the United States Supreme Court in Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), and Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).
I disagree with the majority on the remedy. In my view, it is possible to sever the unconstitutional portion of the statute from the remainder.
The Florida Supreme Court has said:
In resolving the issue of severability, this Court has consistently applied the tests set forth in Cramp v. Board of Public Instruction of Orange County, 137 So.2d 828 (Fla.1962):
When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken.
Smith v. Department of Insurance, 507 So.2d 1080, 1089-90 (Fla.1987) (citations omitted).
"The Cramp test is a well established component of Florida law. It has been applied repeatedly in countless Florida cases...." Schmitt v. State, 590 So.2d 404, 415 (Fla.1991) (citation and footnote omitted).
Further:
[S]everability does not always depend on the inclusion of a severability clause in a legislative enactment. Such a clause only buttresses the case for severability. If the four parts of the Cramp test are met, severability can occur whether or not the enactment contains a severability clause.
Schmitt, 590 So.2d at 415 n. 12.
Looking at the statute as a whole, the statute accomplishes the following main objectives:
(a) Registration of offenders;
(b) Disclosure of an offender's location and prior criminal record on the Florida Department of Law Enforcement website and through community notification; and
(c) Labeling certain offenders as "predators."
Item (c) is constitutionally infirm, but items (a) and (b) are valid.
Under the Cramp test, the first question is whether the unconstitutional provisions can be separated from the remaining valid provisions. Cramp, 137 So.2d at 830. The answer is yes. The website contains a listing of sex offenders under Florida's various statutes on the subject. See §§ 775.21, 943.0435, 944.607, Fla. Stat. All criminal history information is reported in the same format, with the exception that those who qualify as predators under section 775.21 carry the designation "predator" in red letters on the summary page listing the various offenders. The term appears again on the individual history page. The term "predator" can be excised while leaving the remaining information about the offender and his criminal record intact. The website and other public notification materials can substitute a neutral term, such as "sexual offender," or "criminal history information," in place of the stricken term.
Similarly, the statute contains regulations for the registration of offenders who meet the statutory criteria. See § 775.21(6), Fla. Stat. The registration requirements remain enforceable. In entering an adjudication under this statute, the court should simply adjudicate that the offender qualifies under section 775.21, Florida Statutes, rather than adjudicating the offender to be a "sexual predator."
The second question under Cramp is whether the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void. 137 So.2d at 830. Again, the answer is yes. The thrust of the statute is to require offender registration and to make offender criminal record information available to the public through the internet and otherwise. These purposes can be accomplished even if the "predator" label is stricken.
The third question under Cramp is whether the good and bad features are not so inseparable in substance that it can be said the Legislature would have passed the one without the other. 137 So.2d at 830. There is no doubt that the Legislature would have passed this statute regardless of whether the term "predator" was included.
The fourth question under Cramp is whether an act complete in itself remains after the invalid provisions are stricken. Again, the answer is yes. The statute adequately defines who is covered, what registration procedures must be followed, and what mechanism is created for public disclosure. The only modification relates to the use of the term "predator."
The State argues that the statute should be upheld in its entirety under Smith v. Doe and Connecticut Department of Public Safety v. Doe, but the State is incorrect. The Alaska and Connecticut statutes at issue in those cases did not use the term "predator" or any other terminology suggesting that the offender is a present danger to the public.
I would urge the Florida Legislature to revisit the statute at its earliest opportunity. By adjusting the terminology, the constitutional defect in this statute can be corrected and the statute brought into compliance with Smith v. Doe and Connecticut Department of Public Safety v. Doe.
Espindola v. State, 855 So.2d 1281, 1291-92 (Fla. 3d DCA 2003) (Cope, J., concurring in part and dissenting in part).